**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| **QR SPEX, INC.,** | |
| **Plaintiff,** | |
| **vs.** | **Case No. 5:06-CV-124 (DF)** |
| **MOTOROLA, INC., OAKLEY,** | |
| **INC., ZEAL OPTICS, INC., XONIX** | |
| **ELECTRONIC CO., LTD., and** | |
| **KYOCERA WIRELESS CORP.,** | |
| **Defendants.** | |

**DEFENDANT OAKLEY, INC.'S AND MOTOROLA, INC.,'S**
**JOINT MOTION TO: (1) DISMISS OAKLEY, INC. FOR LACK OF PERSONAL**
**JURISDICTION, (2) DISMISS OR ALTERNATIVELY TRANSFER FOR**
**IMPROPER VENUE, (3) DISMISS FOR LACK OF SUBJECT MATTER**
**JURISDICTION, (4) DISMISS FOR FAILURE TO STATE A CLAIM,**
**OR (5) ALTERNATIVELY TO SEVER, AND**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

1.      PLEASE TAKE NOTICE that Defendants Oakley, Inc. ("Oakley") and Motorola, Inc. ("Motorola") hereby move the Court to dismiss Plaintiff's, QR Spex, Inc., Complaint for patent infringement under Fed. R. Civ. P. 12(b), or to transfer the action to the Central District of California under 28 U.S.C. § 1404(a).

2.      Defendant Oakley moves that it be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Defendants Oakley and Motorola move to dismiss under Fed. R. Civ. P. 12(b)(3), or alternatively transfer this action under 28 U.S.C. § 1404(a) to the Central District of California for improper venue.  Defendants

also jointly move to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

3.      Alternatively, if the Court denies those motions, the Defendants request under Fed. R. Civ. P. 21 that the action against the Oakley/Motorola accused product be severed from the rest of this action against the remaining Defendants.

4.      This motion is based upon this notice of motion and motion, including the accompanying memorandum of points and authorities, any reply memorandum of points and authorities to be submitted in support of this motion in the future, and upon the declarations of Gregory K. Nelson (Exhibit "A"), Link Newcomb (Exhibit "B"), Scott Olivet (Exhibit "C"), Stuart Shanus (Exhibit "D"), and Thomas Miller (Exhibit "E") submitted in support of this Motion, as well as upon any oral argument the Court may hear as part of this Motion at the hearing of this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

5.      In 2003, QR Spex sued Motorola, among others, for patent infringement and trade secret violations related to Bluetooth eyewear, in the Central District of California.  The judge in that suit became very familiar with the prior art and the background of the then-pending patent application that subsequently issued as the patent in suit in this matter, U.S. Patent No. 6,769,767.  In fact, the court in considering whether a trade secret existed, considered and ruled on matters related to the anticipated obviousness and scope of the '767 patent.  Presumably, it is this history that Plaintiff QR Spex, Inc. ("QR Spex") is trying to run from in forum shopping this case.  However, in doing so, Plaintiff has really jumped the gun as the accused Oakley/Motorola product is not on sale anywhere and specifically will not be offered for sale or sold in Texas.

6.      None of the parties in this lawsuit – neither Plaintiff nor any of the five Defendants – are actually present in the State of Texas.  Oakley is not subject to either

general or specific jurisdiction in Texas.  Thus, the exercise of jurisdiction over it would be unconstitutional where there is no infringing activity in the forum.

7.    Venue is not proper over either defendant because neither resides or is subject to personal jurisdiction in the Eastern District of Texas and no infringing activity has occurred here, or will occur here.  As such, the case should be dismissed on this ground, or transferred for convenience to the Central District of California where the case should be been brought.

8.    Not to beat a dead horse, so to speak, but this action should also be dismissed because it is not ripe where the accused product is not on sale anywhere at this time.  Plaintiff, and its counsel, could not have determined infringement prior to filing.[1] Where the action is not ripe, it should be dismissed for lack of subject matter jurisdiction, as well as a failure to stake a claim.  If Plaintiff feels that there is an infringement in the future, they can consider refiling at that time.

9.    Alternatively, if the Court in its discretion determines to retain jurisdiction over Oakley and Motorola, the Defendants request that the action against Oakley and Motorola be severed so as not to cause confusion with the other unrelated companies and unrelated, accused product.   Oakley and Motorola have already reviewed much of the prior art and history of this case, because of their involvement in litigation and business with QR Spex in California, and are in a better position to move faster than the remaining defendants.  This action is a zealous effort by QR Spex to extract what they are not entitled to, and the Defendants are more than ready to remove the threat.

## II.    BACKGROUND

10.    The lawsuit alleges infringement by five separate defendants.  None of these defendants, nor even the Plaintiff, are actually located in the State of Texas. Despite five defendants, the case really boils down to Plaintiff's accusations that three unrelated products infringe its asserted patent.   One of those products is the

---

[1] At the end of the 21-day safe harbor period, Oakley intends to file a separate motion for Rule 11 sanctions for failure to review the accused, but not yet on sale, product for infringement prior to filing suit.  See Judin v. U.S., 110 F. 3d 780 (Fed. Cir. 1997).

Oakley/Motorola "O Rokr," which is not on sale at this time and will not be available in this forum.  Neither Oakley nor Motorola have any relationship with any of the other defendants, and the "O Rokr" has no relationship to any other accused product.  (Exhibit C, ¶ 2)

A.    **Oakley, Inc. Has No Presence In The State Of Texas.**

11.    Oakley is a manufacturer and seller of numerous products, including eyewear, apparel, footwear, watches, bags and accessories.  Oakley has done business in Orange County, California since its initial incorporation in 1975.  (Exhibit B, ¶ 3)  Oakley products are sold at retail throughout the nation and the world.  However, ***Oakley, Inc.*** does not sell those products anywhere other than California, and specifically sells no products in Texas.  (Exhibit B, ¶ 6); Exhibit C, ¶ 9)

12.    Domestically, Oakley products are sold directly to retailers or consumers.  Oakley Sales Corp. is responsible for all sales to retail accounts.  (Exhibit B, ¶ 10)  Oakley Sales Corp.  is also a Washington corporation that aside from handling the sales with domestic accounts, also has contracts with all outside, independent Oakley sales representatives and owns and manages Oakley's retail stores.  (Exhibit B, ¶ 10)

13.    Direct sales to consumers are completed by Oakley Direct, Inc.  The official Oakley website, www.oakley.com, does advertise the sale of Oakley products and allows consumers to purchase product directly.  However, the sales of Oakley product on the Internet are not made by Oakley.  The domain name, www.oakley.com, is owned by Oakley Direct.  (Exhibit B, ¶ 12)  If a consumer in Texas were to purchase Oakley product on the Internet or by telephone, the transaction would be with Oakley Direct, not Oakley, Inc.

14.    Oakley owns no property or assets in Texas.  (Exhibit B, ¶ 4) Oakley has no bank accounts in Texas and pays no taxes in Texas.  (*Id.*) Oakley has no offices, management, or employees in Texas, and makes no business decisions in Texas. (*Id.*)  Oakley's outside sales force are all independent contractors and are employed by Oakley

Sales Corp., not Oakley, Inc.  (Exhibit B, ¶ 5)  Oakley, Inc., simply put, has no presence in Texas.

**B.    Motorola Does No Business In The State Of Texas Related To The Accused Product, And No Business In This District.**

15.    Motorola is a global leader and innovator in wireless and broadband communications, and Fortune 100 company.  Motorola is a Delaware corporation, with its principal place of business located in Schaumburg, Illinois.  (Exhibit E, ¶ 4) Motorola is registered to do business in Texas and has a registered agent here.  However, Motorola has not sold the accused product at all.  (Exhibit E, ¶ 7)  Moreover, Motorola will not be selling the accused product in this state.  (Exhibit C, ¶ 8)

**C.    QR Spex's Litigation History With Motorola and Business With Oakley in The Central District of California.**

16.    QR Spex and the patent-in-suit are notorious in the Central District of California.  In 2000, the owner of QR Spex discussed developing a Bluetooth eyewear with a company in California called Frog Design.  Subsequently, Frog Design did not do the project with QR Spex, but moved on to a project with Motorola.  After learning of this joint venture, QR Spex sued Frog and Motorola in the Central District of California for, among other things, trade secret misappropriation stemming from the patent application that issued as the present patent-in-suit.  (Exhibit A, Ex. 1; Exhibit D ¶ 4)

17.    The Central District of California became very involved in the case, even reading and reviewing expert testimony on prior art and the state of the art as it related to the obviousness of Bluetooth eyewear.  (Exhibit D, ¶ ¶ 6-7)  In a summary judgment ruling, after reading deposition testimony and expert statements, the court found there was no protected trade secret because of the publication of the pending patent application that issued as the '767 patent-in-suit.  The court believed that Bluetooth eyewear was obvious and the claims of this patent must be narrowly construed.  (Exhibit D, ¶ 6) The matter illustrates that QR Spex not only finds that forum convenient, but also argued

issues regarding the obviousness and scope of the substance of this patent in the Central District of California against Motorola.  (Exhibit A, Ex. 3)

18.    In the summer of 2001, QR Spex approached Oakley about jointly developing Bluetooth enabled eyewear.  Oakley was already in the process of developing its own technology for Bluetooth enabled eyewear, but was willing to listen to QR Spex about whether they had better ideas about how to functionally do the project.  (Exhibit B, ¶ 14)  After Oakley and QR Spex signed a Non-Disclosure Agreement to govern their tentative arrangement at that time, the parties got down to examining each other's ideas. (Exhibit B, Ex. 2) The NDA not only was governed by California law, but provided for exclusive jurisdiction in Orange County, California.  (Id.)

19.    Oakley started looking at QR Spex's patent publication and disclosure.  In doing so, Oakley found that there was serious prior art concerns, severe limitations about the applicability of the patent, and concessions made in prosecution before the USPTO that made the patent rather useless.  (Exhibit B, ¶ 15)  Accordingly, Oakley determined to not do a project with QR Spex, but to continue down its own path.  A couple of years later, QR Spex again approached Oakley in California and wanted to renew discussions with Oakley, signed a new Non-Disclosure Agreement (Exhibit B, Ex. 3), but again Oakley was not interested.  Apparently now, QR Spex wants to use litigation as a weapon to extract a license that they could not get legitimately.

   **D.    The "O Rokr" Product Is Not On Sale And Will Not Be Offered For Sale Or Sold In Texas.**

20.    Oakley and Motorola jointly developed a Bluetooth enabled sunglass, which they release last year, called the "Razrwire", which was released in 2005.[2]  With good success on that product, Oakley and Motorola undertook the development of the latest project, the "O Rokr," which is a Bluetooth enabled sunglass that allows the wearer

_____

[2] Plaintiff does not accuse this product of infringing its patent.  (Exhibit A, ¶10)

to hear streaming audio in stereo, such as from your iPod, as well as to talk on the cell phone. (Exhibit C, ¶ 3) Oakley and Motorola hoped to have the product on the market in the third quarter. (*Id.*) However, in light of this lawsuit, Oakley and Motorola have no intention of selling the product in Texas or Oklahoma in the foreseeable future. (*Id.*) The accused product is not found in Texas, is not made or used in Texas, is not sold and will not be sold in Texas, and is not offered for sale in Texas. (Exhibit C, ¶¶ 8, 11) If QR Spex had done its due diligence and waited to see if an infringing product were sold, perhaps this situation would be different. But, as it stands, both defendants have excluded this product from Texas, divesting this Court of jurisdiction and venue.

### III.    DISCUSSION

A.    <u>**There Is No Personal Jurisdiction Over Oakley Where There Is No Infringing Activity In Texas.**</u>

21.    When no infringing activity is occurring in this forum, there can be no jurisdiction over Oakley. In all actions for patent infringement, the district court applies the law of the Federal Circuit to determine whether it has personal jurisdiction over defendants. <u>See</u> <u>Hildebrand v. Steck Mfg. Co.</u>, 279 F. 3d 1351, 1354 (Fed. Cir. 2002); <u>3D Sys., Inc. v. Aarotech Labs., Inc.</u>, 160 F. 3d 1373, 1377 (Fed. Cir. 1998). The court first looks to the forum state's jurisdictional statute, and then to the requirements of the Due Process clause. <u>See</u> <u>Genetic Implant Sys., Inc. v. Core-Vent Corp.</u>, 123 F. 3d 1455, 1458 (Fed. Cir. 1997). The Texas long arm statute extends to the limits of due process provided by the U.S. Constitution. <u>Tex. Civ. Prac. & Rem. Code Ann.</u> §§ 17.042-043. Thus, due process is only satisfied if "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, (1980) 444 U.S. 286, 297; <u>GundleLining Const. Corp. v. Adams Ct. Asphalt, Inc.</u>, 85 F.3d 201, 204 (5th Cir. 1996).

22.    The constitutional exercise of jurisdiction requires that a defendant must have "purposefully availed [itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>,

357 U.S. 235, 253 (1959). Jurisdiction may be established as either "general" or "specific" jurisdiction. General jurisdiction allows the exercise of jurisdiction over a defendant with "continuous and systematic" contacts with the forum state for any cause of action, even if it has no direct relation to the contacts. See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414-416 (1984). On the other hand, specific jurisdiction only exists when the cause of action "arises out of" or "relates to" the contacts with the given forum and is reasonable. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985).

23. Where a defendant contests a court's exercise of personal jurisdiction, the plaintiff bears the burden of setting forth a *prima facie* showing that the exercise of jurisdiction is proper. See Mink v. AAAA Dev. LLC, 190 F. 3d 333, 335 (5th Cir. 1999). The court need not "credit conclusory allegations, even if uncontroverted," but should look at the facts concerning the defendant's contacts. Panda Brandywine Corp. v. Potomac Elect. Power Co.," 253 F. 3d 865, 868-69 (5th Cir. 2001) ("Establishing a *prima facie* case still requires the plaintiff to show the non-resident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state.").

24. In this case, Plaintiff has the burden to demonstrate by a preponderance of the evidence that Oakley has sufficient contacts to merit the exercise of jurisdiction. See Pieczenik v. Dyax Corp., 265 F. 3d 1329, 1334 (Fed. Cir. 2001); Quick Technologies, Inc. v. Sage Group PLC, 313 F. 3d 338, 343-44 (5th Cir. 2002). Plaintiff has not and can not satisfy this burden.

**1. Oakley is not subject to general jurisdiction in Texas.**

25. Plaintiff cannot reasonably argue that general jurisdiction extends to Oakley. General jurisdiction may only be found where a defendant's "contacts with a forum are 'continuous and systematic' … even when the cause of action has no relation to those contacts." Red Wing Shoe Co. v. Hockerson –Halberstadt, Inc., 148 F. 3d 1355, 1359 (Fed. Cir. 1998). Oakley has no property, no offices, no bank accounts, no

employees, and makes no business decisions in Texas.  (Exhibit B, ¶¶ 3-4)  Even though Oakley-branded product is sold in Texas, Oakley does not have the requisite continuous and systematic contacts with Texas that would make it amenable to general jurisdiction in this forum.  These sales, by third parties, represented 2.8% of Oakley brand sales last year and 1.65% this year.  (Exhibit B, ¶ 13)   See generally Riviera Trading Corp. v. Oakley, Inc., 944 F. Supp. 1150, 1156-57 (S.D.N.Y. 1996) (holding Oakley not amenable to general jurisdiction, though Oakley was selling products directly to retailers in New York at the time of the suit).

26.    Case law is clear that subsidiary sales do not translate to general jurisdiction over a parent company.  See, e.g., American Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc., 106 F. Supp. 2d 895, 899 (N.D. Tex. 2000) ("A parent corporation is not subject to the jurisdiction of a forum state merely because of the business activity of a subsidiary in that forum.  Nor is 100% stock ownership and commonality of officers and directors alone sufficient to establish jurisdiction over a parent through its subsidiary." (citations omitted)); cf. Fields v. Sedgwick Assoc'd Risks, Ltd., 796 F.2d 299, 301-02 (9th cir. 1986) ("[A] parent corporation's ties to a forum do not create personal jurisdiction over the subsidiary.  Thus, [a parent's] ties to [the forum] are irrelevant." (citation omitted)).  Further, sales of Oakley product are domestically handled by Oakley subsidiaries.  A parent company cannot be liable for infringing sales unless the corporate veil is pierced.  See Aspex Eyewear, Inc. v. Altair Eyewear, Inc., 361 F. Supp. 2d 210, 217 (S.D.N.Y. 2005)  ("the clearest statement from these cases suggests that the standard for piercing the corporate veil must be met before a parent may be held liable for the acts of its subsidiary").

27.    Independent contractors, such as those retained by Oakley Sales Corp., being present in a forum does not equate with that company, let alone the parent, Oakley, being present in the forum.  See Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996); Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 459 (10th Cir. 1996).

28.    Maintenance of a website, even if it were interactive, does not convey general jurisdiction over a non-resident defendant.  See Revell v. Lidov, 317 F. 3d 467, 471 (5th Cir. 2002).  Indeed, this court has held that the maintenance of an interactive website is not sufficient to convey general jurisdiction.  See J-L Chieftain, Inc. v. Western Skyways, Inc., 351 F. Supp. 2d 587, 593-94 (E.D. Tex. 2004) (maintenance of a website that allowed sales to occur in Texas was not sufficient in conjunction with other traditional contacts to support general jurisdiction).  Thus, even sales by Oakley Direct, Inc. of *non-accused* product over the internet and in this jurisdiction would not be sufficient to establish general jurisdiction over Oakley.  See id. at 595, citing Helicopteros, 466 U.S. at 418, Burger King, 471 U.S. at 478-79; Bearry v. Beech Aircraft Corp., 818 F. 2d 370, 375-76 (5th Cir. 1987).

29.    The sale of non-accused product by Oakley Sales Corp. and Oakley Direct, Inc., which represent a de minimus sales percentage and are completed in California, does not represent a regular and systematic business presence for Oakley in Texas. General jurisdiction would be improper over Oakley, and the court must look to whether specific jurisdiction exists, if this suit is to be maintained against Oakley.

## 2.  **It would be unconstitutional to exercise specific jurisdiction over Oakley where the accused product is not on sale in this forum.**

30.    Why this action was initiated in this forum is largely speculative, except to presume that QR Spex is forum shopping to avoid an earlier adverse ruling in California. unless plaintiff is simply forum shopping for some perceived advantage.  See Adell Corp. v. Elco Textron, Inc., 51 F. Supp. 2d 752, 755 (N.D. Tex. 1999).  Otherwise, this lawsuit has no apparent nexus with the State of Texas, as the accused product has not been sold at all and will not be sold in Texas.

31.    As detailed above, Oakley is not present in Texas.  Therefore, Plaintiff must show that Oakley has sufficient minimum contacts with this forum related to the cause of action "such that the maintenance of the lawsuit does not offend 'traditional

notions of fair play and substantial justice.'" <u>Akro Corp. v. Luker</u>, 45 F. 3d 1541, 1545 (Fed. Cir. 1995), <u>quoting</u> <u>Int'l Shoe</u>, 326 U.S. at 316.

32.    Specific jurisdiction exists "when the cause of action at issue 'arises out of or relates to' contacts [with the forum] … even if those contacts are 'isolated and sporadic.'" <u>Red Wing Shoe</u>, 148 F. 3d at 1359.  More specifically, the Federal Circuit test for specific jurisdiction requires the satisfaction of a three-prong test: "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claims arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair." <u>3D Systems</u>, 160 F. 3d at 1378, <u>citing</u> <u>Akro Corp. V. Luker</u>, 45 F. 3d 1541, 1545-46 (Fed. Cir. 1995).

33.    That Oakley has and is selling non-accused product in Texas is irrelevant for specific jurisdiction.  The Federal Circuit has clearly held that in cases of patent infringement, to be amenable to jurisdiction, the defendant's alleged infringing activity must take place in the forum state.  <u>See id.</u>; <u>Hollyanne Corp. v. TFT, Inc.</u>, 199 F.3d 1304, 1308 (Fed. Cir. 1999).  Thus, any contacts by Oakley with Texas, must arise out of or relate to Plaintiff's allegations of infringement to support a finding of jurisdiction.

34.    "Patent infringement occurs when someone 'without authority makes, uses, offers to sell or sells any patented invention.'" <u>3D Systems</u>, 160 F. 3d at 1378.  There is, or should be, no dispute that no infringing activity is occurring in the forum.  The accused product is not made in this forum.  It is not present in the forum; hence, it not used here or sold here.  Finally, there is no offer for sale that is occurring in Texas because no allegedly infringing product can be sold in Texas.  Accordingly, there is a lack of minimum contacts with regard to Oakley.

a) **Oakley has no minimum contacts with this forum "arising out of" or "related to" the accused infringement.**

35.    Under the patent laws, Oakley is not making, using, selling, or offering to sell the accused product in Texas.  The accused product will be made overseas.  (Exhibit C, ¶ 4)  None of the accused product is present in Texas, so it could not be used here.

(Exhibit C, ¶ ¶ 10-11)   Therefore, to determine if minimum contacts arising out of or related to the allegations exist, the only appropriate inquiry is whether Oakley is selling or offering to sell the accused product in Texas.

(1) <strong><u>No sales of the accused product have or will occur in Texas.</u></strong>

36.    Where the accused product is not on sale in the forum, this court lacks jurisdiction over Oakley.  See <u>Quality Tubing, Inc. v. Precision Tube Holdings Corp.</u>, 75 F. Supp. 2d 613, 621 (S.D. Tex. 1999) (in granting summary judgment of non-infringement, the court held there can be no infringing activity where no delivery of allegedly infringing product would occur).   Defendant's conclusory allegations are insufficient in the face of Oakley's evidence that no sales are occurring in Texas. (Exhibit C, ¶ 11)

37.    Any attempt by Plaintiff to argue that an "Official Oakley Website" somehow suffices to convey jurisdiction is futile because the accused product is not available on-line.   The Fifth Circuit applies the "sliding scale" rule, first articulated by <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119, 1122-23 (W.D. Pa. 1997), for jurisdiction arising from Internet activity. See <u>Mink v. AAAA Development LLC</u>, 190 F. 3d 333, 336 (5th Cir. 1999).

> "The <u>Zippo</u> decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet…. In this situation, personal jurisdiction is proper.  At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet.   With passive websites, personal jurisdiction is improper.  In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer.  In this middle ground, 'the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website.'" (citations omitted)

*Id.* at 336.  In <u>Mink</u>, the Fifth Circuit found that a defendant that maintained a website that advertised its products and services, had a printable mail-order form, provided a toll-free number, mailing address, and email contact, but does not accept orders on its website is not amenable to jurisdiction.  See *id.* at 337.

38.    Oakley is in a similar position, if not more so, with regard to the accused product.

39.    The O Rokr is not on sale, and will not be available for sale, in this forum on the Internet or otherwise.  (Exhibit C, ¶¶ 6, 7, 11)  Significantly, the website does not allow for purchase of the accused O Rokr product, and in fact disavows any potential sale in this form.    As it relates to the product at issue, the website is Zippo-passive and jurisdiction is improper.  See <u>J-L Chieftain</u>, 351 F. Supp. 2d at 594; <u>Cybersell, Inc. v. Cybersell, Inc.</u>, 130 F.3d 414, 418-19 (9th Cir. 1997).  Detailed product information, like that available for other Oakley products, is not available at this time on the official Oakley website.  The only reference to the accused product is a press release, describing the product and indicating that it is not presently available, and ***"will not be available in Texas or Oklahoma."*** (Exhibit C, Ex. 2)  This summer, there will be a detailed product link on the website.  However, no accused product will be available for sale there, and there is a specific disclaimer that will state: ***"This product is not available in Texas or Oklahoma."*** (Exhibit C, Ex. 1)

40.    Additionally, Oakley has the right to avoid jurisdiction in a particular forum by following the advice of the courts and limiting to whom it will sell the accused products.  As the <u>Zippo</u> court stated, if Oakley, or more particularly any subsidiary, "had not wanted to be amenable to jurisdiction in [Texas], it could have chosen not to sell [its products] to [Texas] residents."  <u>Zippo</u>, 952 F. Supp. at 1126-27; <u>see also</u>

<u>Stomp, Inc. v. Neato, LLC</u>, 61 F. Supp. 2d 1074, 1080-81 (C.D. Cal. 1999).[3]  This is exactly what Oakley has done with regard to the O Rokr – it will not be available in any manner in this jurisdiction.  There is and will be no infringing sales in Texas that could confer jurisdiction.  Consequently, jurisdiction is lacking.

(2) <u>There is no offer to sell the accused product in Texas.</u>

41.    If the intent is to not consummate an allegedly infringing sale in the forum, then there can also be no infringing "offer to sell."  <u>See</u> <u>Cybiotronics, Ltd. v. Golden Source Electronics, Ltd.</u>, 130 F. Supp. 2d 1152, 1171 (C.D. Cal. 2001); <u>Quality Tubing</u>, 75 F. Supp. 2d at 623-24.  No infringing product will be available or sold in Texas, so there can be no contract for an infringing sale to be completed.

42.    For purposes of an infringement analysis by an "offer to sell", the court applies general contract principles.  <u>3D Systems</u>, 160 F. 3d at 1379; <u>Rotec Indus., Inc. v. Mitsubishi Corp.</u>, 215 F 3d 1246, 1254-55 (Fed. Cir. 2000).  Without committed language to sell, any advertisements, catalogs, price lists or promotional materials are solicitations and not offers to sell.  <u>See</u> <u>Hollyanne</u> 199 F. 3d at 1309-10 (offer to denote without price quote, delivery date, product description, or availability dates is not an offer to sell); <u>Engate, Inc. v. Esquire Deposition Serv. LLC</u>, No. 01 C 6204, 2003 WL 21372472, *9 (N.D. Ill., Sept. 8, 2003) (website without these hallmarks is not an offer).

43.    An allegedly infringing offer to sell must be of such a character that "the defendant 'communicate[s] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is

---

[3]    "It is the merchants who seek to sell their goods only to consumers in a particular geographic that can control the location of resulting lawsuits.  The owner of a website can (1) include a disclaimer that it will not sell its products outside a certain geographic area, and (2) an interactive "clickwrap agreement" that includes a choice of venue clause which a consumer must agree to before being allowed to purchase any products. . . . But when a merchant seeks the benefit of engaging in unlimited interstate commerce over the Internet, it runs the risk of being subject to the process of the courts of [] those states."  <u>Stomp</u>, 61 F. Supp. 2d at 1079

invited and will conclude it.'" MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F. 3d 1369, 1376 (Fed. Cir. 2005), quoting Rotec, 215 F. 3d at 1255. A bright line rule has emerged among the district courts following this language. An infringing offer to sell must be one that contemplates an infringing sale that will be consummated. See Cybiotronics, 130 F. Supp. 2d 1171; Quality Tubing, 75 F. Supp. 2d at 623-24.

44.    After thoroughly reviewing the Federal Circuit case law regarding an "offer to sell," the Quality Tubing court granted summary judgment that there was no infringing offer to sell because there could be no completed sale for which the offer was made that would arguably constitute infringement. See id. at 624. Likewise, the Cybiotronic court noted that there could be no infringing offer to sell unless that offer to sell contemplates an infringing sale that would be consummated. 130 F. Supp. 2d at 1171. This reasoning comports with traditional notions of contract law. See also TransOcean Offshore Deepwater Drilling, Inc. v. Globalsantafe Corp., 400 F. Supp. 2d 998, 1013 (S.D. Tex. 2005) (bid to perform allegedly infringing process was not an infringing offer to sell where the bid included no price that could result in a consummated deal); Technical Mfg. Corp. v. Integrated Dynamics, Engineering, Inc., 183 F. Supp. 2d 339, 342 (D. Mass. 2002) (negotiation and execution of a contract to sell allegedly infringing product is not an infringing offer unless it would result in an infringing act); Natare Corp. v. Aquatic Renovation Sys., Inc., 99 F. Supp. 2d 986, 991 (S.D. Ind. 2000) (bid to install a pool that did not include an infringing process could not constitute an infringing offer).

45.    QR Spex may attempt to argue that any offer to sell, whether consummated or not, is an infringing offer. However, a review of the cases that have found infringing offers shows that the facts are different than the present case. See, e.g., SEB, S.A. v. Montgomery Ward & Co., Inc., 412 F. Supp. 2d 336 (denying summary judgment of non-infringement where at least an offer to sale was made in the United States and the allegedly infringing product shipped to the United States); Wesley Jessen Corp. v. Bausch & Lomb, Inc., 256 F. Supp. 2d 228, 235 (D. Del. 2003) (on hearing to determine

violation of injunction prohibiting further infringement, court determined that to sell an infringing product that was negotiated in the forum but would result in sales outside the United States was an infringing offer to sell, would be a violation of a injunction); Synaptic Pharmaceutical Corp. v. MDS Panlabs, Inc., 265 F. Supp. 2d 452 (D. N.J. 2002) (denying motion for summary judgment of non-infringement because an offer to sale was consummated in the United States where the allegedly infringing test process was conducted overseas with results forwarded to customers in the United States); Star Scientific Inc. v. R.J. Reynolds Tobacco Co., 174 F. Supp. 2d 388, 393-94 (D. Md. 2001) (issue of fact remained as to whether an infringing sale was completed, thus consummating an earlier infringing offer). The facts of all these cases are distinguishable from the present case.  In one case, the court was looking to determine if there was a violation of an injunction.  In all the remaining cases, ultimately, infringing sales or uses were consummated.  Neither fact pattern is present here.

46.    QR Spex has the burden to show that infringing activity will occur in Texas.  Plaintiff cannot show that Oakley has offered to sell an infringing product that will result in consummated infringing sales in Texas.  There can be no infringing offer to sell in Texas because no infringing sales of allegedly infringing product will occur in Texas.  Instead, Oakley and Motorola have expressly refused to sell the accused product in Texas.  (Exhibit C, ¶¶ 6-8, 11)  The evidence in this case may show that infringing offers may exist in other states, but not in Texas.

47.    In sum, there are no contacts, or even minimum contacts, with Oakley, Inc., and Texas that "arise out of" or "relate to" Plaintiff's allegations of infringing activity. The product is not made or used in Texas, and is not offered for sale there because it has not and will not be sold in Texas.

b) **The exercise specific jurisdiction over Oakley is unreasonable.**

48.    Even if the court determined that Oakley has sufficient minimum contacts in Texas, the exercise of jurisdiction would still not be constitutional unless it is reasonable and satisfies "concepts of fair play and substantial justice."  Viam Corp. v.

Iowa Export-Import Trading Co., 84 F. 3d 424, 429 (Fed. Cir. 1996). This showing requires a balancing of:

> "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

Burger King, 471 U.S. at 476-77. Though such cases typically are those rare situations where the plaintiff's and state's interests are disassociated, a compelling case exists here. See Akro, 45 F. 3d at, 1549.

49.    As set forth above, the extent of Oakley's interjection into Texas is non-existent. Oakley has no physical presence here, and actually makes no sales in Texas of any product. The accused O Rokr product has not even been released and will have no sales in Texas. Where an infringement has not occurred in this district, and will not occur, it is unreasonable to hale Oakley here to litigate.

50.    There is a great burden on having Oakley come to this forum to litigate. Oakley has no offices here, and will have to bring witnesses and documents to this forum, in addition to retaining local counsel. A list of the potential out-of-state witnesses suggests that there would be not only great costs to having trial go forward in this district, but also a great distraction to Oakley's business. (Exhibit A, ¶ 8)

51.    Texas does have a recognized interest in protecting its citizens and providing recourse for infringement that occurs in the district. See Moore v. Harney Hardware Inc., H-05-4054, 2006 WL 1342820 at *3 (S.D. Tex., May 15,2006). However, no citizens have been injured by any infringing sales in this district, as no alleged infringing activity has occurred in this district. Thus, very little deference should be given this factor.

52.    The Eastern District of Texas may very well be an efficient forum for resolution of patent matters generally.  However, the Central District of California is also very efficient, and a particularly efficient forum for this case. The Central District of California gets cases to trial approximately four months later than the Eastern District of Texas (20.5 months versus 15.9 months), but tends to get matters resolved and to final disposition more quickly (7.4 months versus 10.3 months).  (Exhibit A, Ex. 4-5)  QR Spex has previously availed itself of the opportunity to litigate in California when it sued Motorola on related Bluetooth and patent issues. (Exhibit D, ¶ 8)  The Central District of California is already familiar with the patent, its background, and the prior art, making it an even more efficient forum in this case.  (Exhibit D, ¶ 9)

53.    Finally, though Courts are generally deferential to a plaintiff's choice of forum, it should be accorded little deference in this case.  See Hanby v. Shell Oil Co., 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001) (plaintiff's forum choice was not accorded the usual deference where there was no nexus of infringing activity in the Eastern District of Texas).  QR Spex is not present in this forum, and has not even alleged that it conducts business in this forum.  There will be no infringing activity in this forum.

54.    Together, the balancing of the reasonableness factors favors Oakley, and merits dismissal of this action against Oakley for lack of personal jurisdiction.

B.    **Venue Is Improper In This Case As It Relates To Oakley And Motorola, Mandating That The Case Against Them Be Dismissed Or Transferred To The Central District Of California.**

55.    If any claim for patent infringement exists at this time by QR Spex against Oakley, Motorola, or both, this is an improper venue.  Where no infringing activity has occurred here, the claim against Oakley and Motorola should be dismissed or transferred to the Central District of California.

1.    **Venue is improper because neither Defendant is amenable to jurisdiction in the Eastern District of Texas.**

56.     The first test of whether venue is properly situated is whether the defendant is subject to personal jurisdiction in the forum.  See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F. 2d 1574, 1584 (Fed. Cir. 1990).  As neither Oakley nor Motorola are subject to personal jurisdiction in the Eastern District of Texas, venue is improper.

57.     In patent cases, venue is governed by 28 U.S.C. § 1400(b), which holds that venue to proper in (i) "the judicial district where the defendant resides," or (ii) districts "where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Where a defendant "resides" is governed by the general venue statute, 28 U.S.C. § 1391(c).  See Nutrition Physiology Corp. v Enviros Ltd., 87 F. Supp. 2d 648, 652 (N.D. Tex. 2000).  Under this statue, a corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  In other words, the court must find that jurisdiction is proper in this district alone, as if it were a separate jurisdiction from other districts in Texas.  See Spiegelberg v. Collegiate Licensing Co., 402 F. Supp. 2d 786, 793 (S.D. Tex. 2005)

58.     As set forth fully above, Oakley is not amenable to either general or specific jurisdiction.  Thus, venue is improper as to Oakley.

59.     Likewise, where no infringing activity has or will occur in the district, Venue is improper as to Motorola.  If the court finds that Motorola does have sufficient contacts in this district to merit jurisdiction, it would be an unreasonable exercise in this case.  No infringing product is or will be here.  (Exhibit E, ¶¶ 7; Exhibit C, ¶ 8)  Texas has little interest in this matter because no product is here.  The Central District of California has dealt with QR Spex, Motorola and this patent previously.  (Exhibit D, ¶¶ 6-11).  Weighing the reasonableness factors supports that the exercise of jurisdiction over Motorola in this case would be unreasonable.

60.     Where neither Oakley nor Motorola is subject to the jurisdiction of this court, and therefore do not "reside" in this district, the first prong of 28 U.S.C. § 1400(b) for venue fails.  Therefore, venue is improper in this district unless the second prong is

satisfied and Defendants have "committed acts of infringement and [have] a regular and established place of business" in the Eastern District.  "These tests are stated in the conjunctive and both must be satisfied" to establish the second prong.  15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3823, 223-24 (2d ed. 1986).

61.    As set forth above, there has been no infringement in this district by either Defendant.  No accused product has been sold anywhere, and will specifically not be sold anywhere in Texas; product is also not made, used, or offered for sale here.  (Exhibit C, ¶¶ 8, 11)  Additionally, neither Oakley nor Motorola have a "regular and established" place of business within this district, let alone anywhere in Texas.  Neither party has any place of business within this district, let alone any "established" place of business.  The complaint in this action should be dismissed for improper venue.

**2.    Alternatively, this case should be transferred under 28 U.S.C. § 1404(a) to the Central District of California.**

62.    This case can be transferred by this court to any other district where it might have been brought "for the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  Such a transfer is intended to prevent the waste of time, money, and energy by the parties, witnesses, and the forum.  See In re Triton Sec. Lit., 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999).  This court has discretion to transfer this case. See Peteet v. Dow Chemical Co., 868 F. 2d 1428, 1436 (5th Cir. 1989).  The Central District of California should get this case as it handled the previous litigation between QR Spex and Motorola regarding this patented technology.

63.    Before transferring this case to the Central District of California, the Court should first determine if this claim could have been filed there.  See Zoltar v. LG Electronics Mobile Communications Co., Motorola, Inc., et al., 402 F. Supp. 2d 731, 7334-35 (E.D. Tex. 2005) (transferring venue where case could have been brought, against Motorola and others, to Northern District of California that previously considered asserted patents).

64.   It should be undisputed that QR Spex could have brought this lawsuit in the Central District of California; it brought a substantially similar one there already. Oakley resides in that district. Motorola does business in that district with Oakley. QR Spex does business in that district. In fact, QR Spex sought to do business with Oakley in the Central District of California in regard to the very technology asserted here. Moreover, QR Spex sued Motorola in the Central District of California on a patent for Bluetooth enabled eyewear and trade secrets related to Bluetooth enabled eyewear, the underlying technology of this suit. (Exhibit D, ¶¶ 6-11)

65.   Oakley and Motorola have, and do carry, the burden to show that private and public convenience factors favor transfer. See Time, Inc. v. Manning, 366 F. 2d 690, 696 (5th Cir. 1966); In re Triton, 70 F. Supp. 2d at 688.

(a)   **Private Interest Factors.**

66.   The private factors to consider in transferring venue are: "(1) the plaintiff's choice of forum; (2) the relative ease of access to the sources of proof; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4) the place of the alleged wrong; and (5) the possibility of delay and prejudice if transfer is granted." In re Triton, 70 F. Supp. 2d at 688. These factors favor transferring the case.

(1)   **Plaintiff's choice of forum.**

67.   Courts are generally deferential to a Plaintiff's choice of forum, even when forum shopping. See Robertson v. Kiamichi RR Co., 42 F. Supp. 2d 651, 655 (E.D. Tex. 1999). However, QR Spex's forum selection should carry little weight because no operative facts occurred in this forum. See id. at 656. This factor weighs in favor of transfer because no alleged infringement has or will occur in this forum (Exhibit C, ¶ 8) and none of the parties are here. See ; See also Hanby, 144 F. Supp. 2d at 677; Rock Bit Int'l, Inc. v. Smith Int'l, Inc., 957 F. Supp. 843, 844 (E.D.Tex. 1997).

(2)   **Ease of access to sources of proof.**

68.   None of the parties has its headquarters or principal place of business located in this district. QR Spex is in Oklahoma. Oakley is in California. Motorola is in

Illinois.   Defendants believe that the majority of witnesses in this case are located in California and overseas.  (Exhibit A, ¶ 8)  The likely witnesses for the Plaintiff include all the inventors on the patent.  One inventor is in Oklahoma, another is in Illinois, and the four remaining inventors are in California.  (Exhibit A, ¶ 9)  A vast majority of evidence, including expert reports and deposition testimony from previous litigation surrounding the patent-in-suit, is also in California.  See Zoltar, 402 F. Supp. 2d at 738.

(3)    <b>Cost of obtaining attendance of witnesses and other trial expenses.</b>

69.    As set forth in the Nelson declaration, the Defendants' anticipated witnesses are largely in California and overseas.   (Exhibit A, ¶¶ 8-9)  The likely witnesses for QR Spex include the inventors, which as noted above do not reside in Texas.  There is no compulsory process of these witnesses.  No documentary evidence is located here, while a great deal of evidence is sitting in the Central District of California.  Such evidence includes Oakley's evidence regarding the accused product developed with Motorola and evidence from the previous litigation between QR Spex and Motorola.  (Exhibit D ¶¶ 7, 10)  Thus, all witnesses and all documentary evidence would need to be corralled into Texas.   In such a situation, deference should not be accorded the Plaintiff's forum selection, see Rock Bit, 957 F. Supp. at 844, and this factor also favors transfer. See Zoltar, 402 F. Supp. 2d at 739.

(4)    <b>Place of the alleged wrong.</b>

70.    The Defendants are not promoting, offering to sell, marketing, or selling the accused product in the State of Texas.  The product was designed and conceived in California and manufactured in Singapore.  None of the accused product is physically in the State of Texas.  It is not available for purchase at this time, and will not be available for purchase in Texas.  (Exhibit C, ¶ 8)  The product has specifically been designated for non-sale in Texas and Oklahoma, and thus there is no offer for sale here.  Where there is no alleged infringing activity in the forum, this factor heavily favors transfer.

(5)    **Possibility of delay.**

71.    The Fifth Circuit stated that only in rare situations is this a relevant factor to consider, and then, only upon a showing of clear and convincing evidence that a delay or prejudice may occur.  See In re: Horseshoe, 305 F. 3d at 358.  As set forth above, the Central District of California generally gets cases to trial four months longer than this District, but the disposition of cases there typically occurs three months more quickly. Additionally, the Central District of California has previously considered the weight of the patent-in-suit and is familiar with the background and technology of the patent-in-suit, as well as much of the anticipated prior art and obviousness arguments.  Thus, this factor is not relevant, or at least does not favor non-transfer.

(b)    **Public Interest Factors.**

72.    On the other hand, the public interest factors to consider are: "(1) the relative backlog and other administrative difficulties in the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interests in adjudicating local disputes; and (4) the appropriateness of having the case in a jurisdiction whose law will govern the dispute in order to avoid difficult problems in conflicts of laws."  In re Triton, 70 F. Supp. 2d at 688.  A balance of these also favors transfer.

(1)    **Administrative difficulties.**

73.    There are no administrative difficulties that merit consideration of a preclusion of transfer. Though the Central District of California tends to have more cases on its docket that this District, it is still efficient at getting cases to disposition and trial.

74.    "In cases that involve technical subject matter, such as patent litigation, judicial economy may favor transfer to a court that is already familiar with the issues involved in the case." Zoltar, 402 F. Supp. 2d at 735, citing Regents of the Univ. of Cal. V. Eli Lilly & Co., 119 F. 3d 1559, 1565 (Fed. Cir. 1997).  The Central District of California is familiar with the subject matter of this case.  And, QR Spex has implicitly

admitted that it is a convenient forum for it as QR Spex has previously put the substance of this patent at issue in litigation out there.  Indeed, the Central District, though not holding a Markman hearing, has ruled on certain aspects of the scope of this patent. Maintaining judicial consistency would favor having this case back before the Central District of California.

(2)     **Local Interest and burden of jury duty on the local citizens.**

75.     There is no promotion, offer for sale, or sale of the accused product in this district.  None of the parties and none of the witnesses are here.  On the other hand, the accused product emanates from the Central District of California and many of the witnesses and evidence are there.  In this situation, Defendants believe that the local citizens would have little interest in this matter, which would make it a burden for citizens to have to spend 2-3 weeks serving on a jury.  Certainly the local citizens' and this court's time, energy, and expenses would be better spent on other matters.

(3)     **Conflicts of law.**

76.     Defendants are not aware of any conflicts of law that would be relevant. There appear to be no choice of law issues.  Both the Central District of California and the Eastern District of Texas are very proficient in the handling of patent cases.

C.     **The Court Lacks Subject Matter Jurisdiction Over This Case Because It Is Not Yet Ripe Where The Accused Product Is Not On Sale And Has Not Been Reviewed By Plaintiff's Counsel To Determine Infringement.**

77.     This court also lacks subject matter jurisdiction over this matter.  Plaintiff alleges that Oakley and Motorola are selling an infringing product, but in actuality the product is not on sale.  The allegations fail to raise a justiciable issue.

78.     If there is no actual controversy, this court lacks jurisdiction to hear the matter.  See generally Spectronics Corp. v. H.B. Fuller Co., 940 F. 2d 631, 634 (Fed. Cir. 1991).  Typically, in patent cases concerns about subject matter jurisdiction arise in regard to declaratory judgment actions.  In such cases, the court inquires  if "the conflict

be real and immediate, i.e., that there be a true, actual 'controversy' required by the [Declaratory Judgment] Act." <u>Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.</u>, 846 F. 2d 731, 735 (Fed. Cir. 1988). If Oakley, for example, wanted to bring a declaratory relief action in this matter as the patentee, it would have to satisfy the requirements that: (1) it is engaging in activity directed toward making, selling, or using a product that it believes will be accused of infringement (or making meaningful preparation to do so); and (2) there be a reasonable apprehension that a lawsuit is imminent. <u>See, e.g.</u>, <u>Lang v. Pacific Marine & Supply Co., Ltd.</u>, 895 F. 2d 761, 764 (Fed. Cir. 1990). In other words, there needs to be a definite and concrete controversy regarding infringement.

79.    There is no actual controversy in this action, thus divesting the court of jurisdiction. No one has sold any of the O Rokr product. (Exhibit C, ¶ 11) No one is aware of any allegedly infringing product being made in the United States at this time. (<u>Id.</u>) No one is aware that they are in fact using any patented technology that does not belong to them. (<u>Id.</u>) Therefore, this matter is not ripe for consideration at this time, and should be dismissed for a lack of subject matter jurisdiction.

D.    **Plaintiff's Complaint Should Be Dismissed For Failure To State A Claim On Which Relief May Be Granted.**

80.    In most cases, a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted is pointless. However, if ever there was a case that merited dismissal for such failure, it must be this case. Plaintiff cannot in reality make any accusation of infringement at this time, especially when it has not had a chance to review any product to determine infringement.

81.    There is no basis to a patent action in response to rumors of a threat of infringement." <u>Chemical Engineering Corp. v. Marlo, Inc.</u>, 754 F. 2d 331, 334. 35 U.S.C. § 271 governs all claims for patent infringement. As set forth above, Defendants are simply not infringing at this time. Plaintiff believes that they will, but where the infringement is not presently occurring, Plaintiff has failed to make out a claim for infringement. The case should be dismissed as Plaintiff cannot make out a claim.

E.      **If This Case Is Not Dismissed It Should Be Severed In The Interests Of Justice As To Oakley And Motorola.**

82.     Plaintiff's case against Oakley and Motorola should be severed from Plaintiff's claims against the other defendants, if it proceeds here.  This case essentially has three claims, though Plaintiff pleads it as a single cause of action.  Read carefully, and with the further background that Plaintiff fails it allege in its complaint, Plaintiff accuses three separate products of infringing its patent.  First, Plaintiff accuses Oakley and Motorola of infringing its patent with their potential, though as yet unrealized, sale of the Oakley "O Rokr" sunglass.  Second, Plaintiff accuses Zeal Optics and Kyocera of currently selling a product that also infringes its patent.  Finally, Plaintiff accuses Xonix of currently selling an infringing product.  (Exhibit C, ¶ 2)  Oakley and Motorola have no involvement with the other defendants, which are allegedly selling infringing product at this time.  (*Id.*)  Oakley and Motorola not only believe that the claim against them should be dismissed at this time, in light of the several motions pending, but that if the claim against them is allowed to continue that the lawsuit against them be severed from the remaining defendants to avoid any prejudice.

83.     Fed. R. Civ. P. 21 provides that "[a]ny claim against a party may be severed and proceeded with separately."  Once severed, the once joined claims now proceed as separate lawsuits.  See United States v. O'Neil, 709 F. 2d 361, 368 (5th Cir. 1983).  The grant of a motion to sever lies with this court's sound discretion.  See Landis v. North American Co., 299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936); Coughlin v. Rogers, 130 F. 3d 1348, 1350 (9th Cir. 1997); Saval v. BL Ltd., 710 F. 2d 1027, 1031 (4th Cir. 1983); Mosley v. General Motors Corp. 497, F. 2d 1330, 1332 (8th Cir. 1974).

84.     In considering whether to sever the Oakley/Motorola action, the Court should consider the same factors that are typically considered on consolidation, namely, the complexity of the theories and facts, whether the jury may be confused by the intertwining of claims, cross-claims, and third party claims in the same trial, and whether

advance disposition of issues in one trial may simply issues in the second trial.   See Baxter Travenol Labs, Inc. v. LeMay, 536 F. Supp. 247, 250 (S.D. Oh. 1982)

85.     In this case, the Oakley/Motorola claims run amuck of all these considerations.   The facts of the Oakley/Motorola claim are different from the other claims on a few levels.   The Oakley/Motorola accused product is not on sale as yet. Oakley asked Plaintiff to dismiss the present action because Oakley believes there is a serious Rule 11 violation.   As Plaintiff refused to do so, Oakley intends to counterclaim against the Plaintiff for unfair competition and intentional and tortious interference with contractual relationships and prospective economic advantage.   Oakley and Motorola have a past history and after reviewing prior art and prosecution in the USPTO, believes that the patent-in-suit is invalid and/or very narrow and inapplicable.   This past history is a critical part of the Oakley/Motorola defense, which does not translate to the other Defendants.   It also puts Oakley and Motorola in position to proceed more quickly to trial, being more prepared at an earlier stage.   Oakley and Motorola would like its claim resolved as expeditiously as possible, put the threats behind and move on in their businesses.   If trial does go forward against Oakley and Motorola in this District, the resolution of the claim against Oakley and Motorola would likely have a definitive impact on the other defendants' case.   Accordingly, Oakley and Motorola believe that the claim against them should be severed from the other defendants.

## IV.   CONCLUSION

86.     Plaintiff can forum shop, within bounds.   In this case, however, they were over-anxious and Defendants do not need to sell in this jurisdiction.   The accused product is not on sale.   It is physically not in Texas.   There are no offers to sell that can be consummated in Texas. The court lacks personal jurisdiction because the accused product is not made, used, offered for sale or sold in Texas. Venue would be improper, again, because no infringing act has or will foreseeably occur in this district.   Alternatively, it should be transferred to the Central District of California where the court has dealt with the parties, patent, and technology already.   Plaintiff was over-anxious and filed before

the product was available, or even reviewed for infringement.  Accordingly, there is no ripe action at this time.

Respectfully submitted,

DATED:  June 30, 2006            By:

/s/ Melvin R. Wilcox III
_____
Melvin R. Wilcox III
SMEAD ANDERSON & DUNN
2110 Horseshoe Lane
P.O. Box 3343
Longview, TX 75606
Tel: (903) 232-1880
Fax: (903) 232-1889
Email: mrw@smeadlaw.com

Attorney-In-Charge for Defendants
OAKLEY, INC. & MOTOROLA, INC.

OF COUNSEL:

Gregory L. Weeks
CSB 58584
Janet R. Kaufman
CSB 116143
Gregory K. Nelson
CSB 203029
WEEKS, KAUFMAN, NELSON & JOHNSON
462 Stevens Ave., Suite 310
Solana Beach, CA 92075
Telephone: (858) 794-2140
Facsimile:  (858) 794-2141
Email:  wknjlaw@sbcglobal.net

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 30th day of June, 2006.

*/s/ Melvin R. Wilcox, III*
MELVIN R. WILCOX, III