**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| **QR SPEX, INC.,** | |
| **Plaintiff,** | |
| **vs.** | **Case No. 5:06-CV-124** |
| | Judge: David J. Folsom |
| **MOTOROLA, INC., OAKLEY, INC., ZEAL OPTICS, INC., XONIX ELECTRONIC CO., LTD., and KYOCERA WIRELESS CORP.,** | |
| **Defendants.** | |

**DEFENDANTS'. OAKLEY, INC., OAKLEY DIRECT, INC., OAKLEY SALES CORP. AND MOTOROLA, INC., REPLY BRIEF IN SUPPORT OF MOTIONS TO DISMISS, TRANSFER, AND/OR SEVER**

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

<u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES ..................................................................................... ii

I. INTRODUCTION ...........................................................................................1

II. DISCUSSION ................................................................................................. 1

 A. The Stream of Commerce Theory Cannot Support Jurisdiction Here .........1

 B. Neither General Nor Specific Jurisdiction Over Oakley
  Is Appropriate Under an Alter Ego Theory .................................................4

 C. There Was No Allegedly Infringing Offer to Sell the O Rokr ...................6

 D. There Was No Allegedly Infringing Use of the O Rokr............................ 8

 E. Oakley Direct, Inc Is Not Amenable to General or Specific Jurisdiction... 9

 F. This Case Should be Transferred to the Central District of California..... 10

  1. Venue is improper because neither Oakley, ODI, or
   OSC are subject to jurisdiction in the Eastern District of
   Texas ...................................................................................... 10

  2. This case should be transferred to the Central District of
   California under 28 U.S.C. § 1404 ...................................... 11

  3. The first-to-file rule requires that this case be transferred to the
   Central District of California, the forum in which this case
   was first brought by ODI and OSC ......................................12

 G. Plaintiff Fails to Present Any Meritorious Position As To Why
  This Case Should Not Be Severed ......................................... 14

III. CONCLUSION .........................................................................................15

## TABLE OF AUTHORITIES

Alpine View Co. Ltd. v. Atlas Copco AB,
    205 F. 3d 208 (9th Cir. 2000) .........................................................................2, 4

American Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.,
    106 F. Supp. 2d 895 (N.D. Tex. 2000) .............................................................4

Androphy v. Smith & Nephew, Inc.,
    31 F. Supp. 2d 620 (N.D. Ill., 1998) .................................................................14

Asahi Metal Indus. Co. v. Sup Ct.
    480 U.S. 102 (1987).............................................................................................2

Bearry v. Beach Aircraft Corp.
    818 F. 2d 370 (5th Dir. 1987) ...........................................................................2

Beverly Hills Fan Co. v. Royal Sovereign Corp.
    21 F. 3d 1558 (Fed. Cir. 1994) .........................................................................2

Cannon Mfg. Co. v. Cudahy Packing Co.,
    267 U.S. 333 (1925)............................................................................................4

Commissariat, a l'Energie Atomique v. Chi Mei Optoelectronics Corp.
    395 F. 3d 1315 (Fed. Cir. 2005).........................................................................2

Compaq Computer Corp. v. Ergonome Inc.,
    387 F. 3d 403 (5th Cir. 2004) ...........................................................................4

Cybriotronics, Ltd. v. Golden Source Elecs., Ltd.,
    130 F. Supp. 2d 1152 (C.D. Cal. 2001) ............................................................8

Dalton v. R&W Marine, Inc.,
    897 F. 2d 1359 (5th Cir. 1990) .........................................................................6

Dentsply Int'l, Inc. v. Great White, Inc.,
    132 F. supp. 2d 310 (M.D. Penn. 2000)............................................................8

DP Solutions, Inc. v. Rollins, Inc.,
    34 Fed. Appx. 150, 2002 WL 494672 (5th Cir., March 14, 2002) ....................6

Davlyn Mfg. Co., Inc. v. H&M Auto Parts, Inc.
    414 F. Supp. 2d 523 (E.D. Penn. 2005) ...........................................................3

Doe v. Unocal Corp.,
    248 F. 3d 915 (9th Cir. 2001) ...........................................................5

ESAB Group, Inc. v. Centricut, LLC,
    34 F. Supp. 2d 323 (D.S.C. 1999).............................................7, 10

Finck Cigar Co. v. El Duque Group, Inc.
    1999 WL 33290620 (W.D. Tex., Oct. 29, 1999) ................................3

Gardemal v. Westin Hotel Co.,
    186 F. 3d 588 (5th Cir. 1999) ........................................................5

Gator.com  Corp. v. L.L. Bean, Inc.,
    341  F. 3d 1072 (9th Cir. 2003) .....................................................10

Gold v. Burton Corp.,
    949 F. Supp. 208 (S.D.N.Y. 1996)...................................................15

Gorman v. Ameritrade Holding Corp.,
    293 F. 3d 506 (D.D.C. 2002) ..........................................................10

Guardian Media Tech., Ltd. v. Mustek Sys., Inc.,
    2006 WL 2096956 (W.D. Wisc. 2006)..............................................11

Hallwood Realty Partners v. Gotham Partners,
    104 F. Supp. 2d 279 (S.D.N.Y. 2000)..............................................15

Hanby, v. Shell Oil Co.
    144 F. Supp. 2d 673 (E.D. Tex. 2001) ............................................12

Hargrave v. Fibreboard Corp.,
    710 F. 2d 1154 (5th Cir. 1983) ...................................................4, 6

Intermedics, Inc. v. Ventritex, Inc.,
    775 F. Supp. 1269 (N.D. Cal. 1991) .................................................8

J-L Chieftain, Inc. v. Western Skyways, Inc.,
    351 F. Supp. 2d 587 (E.D. Tex. 2004)............................................10

Kelly v. Syria Shell Petroleum Dev. B.V.,
    213 F. 3d 841 (5th Cir. 2000) ........................................................4

Magnavox Co. v. APF Elec.,
    496, F. Supp. 29 (N.D. Ill. 1980) ...................................................15

Mann Mfg. Inc v. Itotex, Inc.,
    439 F. 2d 403 (5th Cir. 1971)  ...................................................................14

Manville Sales Corp. v. Paramount Sys. Inc.,
    917 F.2d 544 (Fed. Cir.1990)...................................................................4

Moldflow Corp. v. Simcon, Inc.,
    296 F. Supp. 2d 34 (D. Mass. 2003) ........................................................8

Multi-Tech Systems, Inc. v. Net2phone, Inc.,
    2000 WL 34494824 (D. Minn., June 26, 2000)...............................14

MyMail, Ltd. v. Am. Online, Inc.,
    223 F.R.D. 455 (E.D. Tex. 2004)...........................................................14

New Jersey Mach., Inc. v. Alford Indus., Inc.,
    21 U.S.P.Q. 2d 2033 (D.N.J. 1991) ......................................................15

Nutrition Physiology Corp. v. Enviros Ltd.,
    87 F. Supp. 2d 648 (N.D. Tex. 2000) ......................................................4

Patin v. Thoroughbred Power Boats, Inc.,
    294 F. 3d 640 (5th Cir. 2002) .................................................................4

Phonometrics, Inc. v. Northern Telecon Inc.
    133 F. 3d 1459 (Fed. Cir. 1998)...............................................................4

Qualcomm, Inc. v. GTE Wireless, Inc.,
    79 F. Supp. 2d 1177 (S.D. Cal. 1999)....................................................14

Quality Tubing, Inc. v. Precision Tube Holdings Corp.
    75 F. Supp. 2d 613 (S.D. Tex. 1999) .......................................................8

Revell v. Lidov,
    317 F. 3d 467 (5th Cir. 2002) ...............................................................10

Robertson v. Kiamichi RR Co.,
    42 F. Supp. 2d 651 ................................................................................12

Rock Bit Int'l, Inc. v. Smith Int'l, Inc.,
    957 F. Supp. 843 (E.D. Tex. 1997).........................................................12

Rotec Indus., Inc. v. Mitsubishi Corp.
    215 F. 3d 1216 (Fed. Cir. 2000)...............................................................7

SAES Getters S.p.A. v. Aeronex, Inc.
    219 F. Supp. 2d 1081 (S.D. Cal. 2002)............................................................14

Sud-Chemie, Inc. v. Multisorb Tech., Inc.,
    2004 'WL 755399 (W.D. Ken. 2004)................................................................9

Taylor v. Ishida Co., Ltd.
    2002 WL 1268028 (N.D. Tex., May 31, 2002) .................................................3

Technical Mfg. corp. v. Integrated Dynamics, Engineering, Inc.,
    183 F. Supp. 2d 339 (D. Mass. 2002) ..............................................................8

Thorn EMI North American, Inc. v. Micron Tech., Inc.,
    821 F. Supp. 272 (D. Del. 1993).......................................................................8

Unisys Corp. v. Amperif Corp.,
    1994 WL 116105 (E.D. Pa., Mar. 15, 1994)....................................................14

United States v. Bestfoods,
    524 U.S. 51, (1998)...........................................................................................5

Viam Corp. v. Iowa Export-Import Trading Co.
    84 F. 3d 424 (Fed. Cir. 1996) ...........................................................................2

Wayne Pigment Corp. v. Halox & Hammond Group, Inc.,
    220 F. Supp. 2d 931 (E.D. Wisc. 2002)............................................................8

World Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980)..........................................................................................2

STATUTES

35 U.S.C. § 271......................................................................................................7

# I.  INTRODUCTION

Plaintiff's opposition is an insufferable 45 pages of misconstructions of law, contrived misrepresentations of facts, and otherwise does little than cast verbal jabs laced with animosity. This reply brief does not have the girth to possibly respond tit-for-tat to all the irrelevant minutia that QR Spex dumped into its brief.  Indeed, much of it merits no reply at all.  If this motion were a Rubik's Cube® puzzle, and the goal were to align the pieces of the cube into a uniform pattern of colors on each side, Plaintiff would try to prevail by removing the stickers and putting them on in a satisfactory pattern.  Plaintiff has employed a shotgun approach to this motion – coloring facts in a preferential and incomplete manner, lacing these "facts" with barbs throughout its opposition, and then ignoring the relevant case law first cited in the Defendants' points and authorities.  Regardless the metaphor, QR Spex fails to carry its burden.

# II.  DISCUSSION

A.      **The Stream Of Commerce Theory Cannot Support Jurisdiction Here.**

QR Spex is nothing if not brash.  Plaintiff relies on unreported district court cases to effectively ask this court to hold what none other has ever done.  QR Spex wants the court to rule that if a corporation's products, unrelated to the lawsuit, are sold by third parties on a national or global level, then the corporation can be sued for any cause of action anywhere in the country its products are sold.  No court has ever reached this drastic conclusion that general jurisdiction is proper where a company's *unrelated* products are sold by others in the forum. In fact, to do so would fly in the face of every jurisdictional case since International Shoe.  Jurisdictional analyses would be irrelevant in the future.  All that would need to be done is show that any of a corporation's many unrelated products are sold in the forum, and "Shazam," jurisdiction is proper for any purpose.  The reality of Plaintiff's fantasy is a sobering slippery slope.[1]

To the contrary, the stream of commerce is a commercial reality-check for jurisdiction that courts have employed in limited situations.  The situations where it has been applied are those where a company's accused product, or product directly related to the lawsuit, are sold

---

[1] Even more brazenly, QR Spex fabricates that complaints filed by Oakley in other cases tacitly admit that jurisdiction is proper in this case under the stream of commerce.  Nothing could be further from the truth.  All those cases involved instances where the defendants directly sold infringing product in the forum, unlike this case. (Exhibit G [Supp. Nelson Decl.], ¶ 2).

indirectly through its intended channels of distribution in the forum.  <u>See</u> <u>World Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) (sales "arise[] from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for **_the product_**" in the forum) (emphasis added); <u>Asahi Metal Indus. Co. v. Sup. Ct.</u>, 480 U.S. 102,  117 (1987); <u>Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.</u>, 395 F. 3d 1315, 1322 (Fed. Cir. 2005); <u>Viam Corp. v. Iowa Export-Import Trading Co.</u>, 84 F. 3d 424, 427 (Fed. Cir. 1996); <u>Beverly Hills Fan Co., v. Royal Sovereign Corp.</u>, 21 F.3d  1558, 1565-66 (Fed. Cir. 1994) ("[t]he cause of action for patent infringement is alleged to arise out of these activities").  In none of these cases was general jurisdiction conveyed in any manner.

Similarly, the Fifth Circuit has specifically stated on multiple occasions that the stream of commerce theory cannot support general jurisdiction.  <u>See</u> <u>Alpine View Co. Ltd. v. Atlas Copco AB</u>, 205 F. 3d 208, 216 (9th Cir. 2000) ("We have specifically rejected a party's reliance on the stream-of-commerce theory to support asserting general jurisdiction over a nonresident defendant."); <u>Bearry v. Beach Aircraft Corp.</u>, 818 F. 2d 370, 375 (5th Dir. 1987) ("A conclusion that there is a stream of commerce … does not ensure that the defendant's relations with the forum is continuous and systematic, such that it can be sued there for unrelated claims.")  In <u>Bearry</u>, the defendant advertised nationally (including in Texas), sold $250 million in products that directly flowed into Texas, and manufactured $72 million of its goods in Texas. Nonetheless, the Court refused to exercise jurisdiction.  <u>See id.</u>  In comparison, even if this court were to attribute all the sales of Oakley® products directly to Oakley, for argument's sake, these sales would not be as substantial as the defendant in <u>Bearry</u>.

The previously-submitted Olivet and Newcomb declarations clearly set forth that no O Rokr product has been placed into the stream of commerce such that it will arrive in Texas through any Oakley authorized channel. No "O Store" in Texas has the product in Texas. (Ex. B [Newcomb], ¶ 11)  The O Rokr is not available to purchasers in Texas over the internet.  (Ex. B [Newcomb], ¶ 17)  No Iacon location in Texas has the O Rokr.  (Ex. C [Olivet], ¶ 8)  Though it is an improper attribution to Oakley, there is no evidence that Cingular and Verizon, traditional Motorola carriers with whom Oakley has no dealings, have the O Rokr.  There are no pre-orders

in Texas with consumers or retailers. (Ex. B [Newcomb], ¶ 17; Ex. C [Olivet] ¶ 5) Where the accused product has not reached this forum in any commercial manner, the court cannot rely on the stream of commerce theory for jurisdiction.

The unreported district court cases on which QR Spex relies are unpersuasive and distinguishable from the present case. In <u>Taylor v. Ishida Co., Ltd.</u>, the court found that the totality of evidence indicated that the defendant, because of its stream of commerce, must soon have the accused product in the forum because the primary purchaser from its distributor, which had just began importing and selling, was located in Texas. <u>See</u> 2002 WL 1268028<u>.</u> at *5 (N.D. Tex., May 31, 2002). After setting forth that the defendant had an established distribution channel with expectations to service Texas, the court noted that the accused product would be going through this channel to Texas:

> "HC's contacts with Texas on Ishida's behalf can be expected to continue in the immediate future with respect to the Atlas bag maker – the accused device. HC is preparing to purchase, import, and resell the Ishida-made Atlas bag makers in the United States. The largest snack food supplier in the United States – who it can reasonably be inferred will be a principal potential customer – is located in Texas and makes its machine qualification decisions here."

<u>Id.</u> In contrast, the O Rokr has not been in Texas for sale or any other commercial activity.

In <u>Finck Cigar Co. v. El Duque Group, Inc.</u>, the court ordered discovery on the stream of commerce issue where the defendant/patentee sold cigars incorporating the trademarks and patented design at issue in the forum, *because general jurisdiction did not suffice*. 1999 WL 33290620, at *2-3 (W.D. Tex., Oct. 29, 1999). Similarly, the sale of *non-accused* Oakley® product by Oakley in California to third parties, which ultimately were resold in Texas, does not support general jurisdiction.

In contrast, where the evidence merely shows that an accused component *might be* sold in the forum but no product had arrived in the stream of commerce to the forum, the exercise of jurisdiction is improper. <u>See</u> <u>Davlyn Mfg. Co., Inc. v. H&M Auto Parts, Inc.</u>, 414 F. Supp. 2d 523, 531 (E.D. Penn. 2005) (dismissing action for lack of specific jurisdiction under either stream of commerce or alter ego theories). Such is the precise case at bar. The evidence has

3

clearly shown that no O Rokr has reached this forum in any commercial manner. Thus, jurisdiction under the stream of commerce would violate due process.

B. **Neither General Nor Specific Jurisdiction Over Oakley Is Appropriate Under An Alter Ego Theory.**

"[A] foreign corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present and doing business there; the mere existence of a parent subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." Hargrave v. Fibreboard Corp., 710 F. 2d 1154, 1159 (5th Cir. 1983) (complete ownership of stock and common officers and directors are insufficient to establish alter ego for personal jurisdiction of a foreign parent company). Numerous cases uphold this hornbook principle. See Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 335 (1925) (affirming dismissal for lack of jurisdiction over parent company that owned all capital stock and shared some officers with a subsidiary present in the forum); Alpine, 205 F. 3d at 218-19; Kelly v. Syria Shell Petroleum Dev. B.V., 213 F. 3d 841, 856-57 (5th Cir. 2000); Phonometrics, Inc. v. Northern Telecom Inc., 133 F. 3d 1459, 1463, 1468 (Fed. Cir. 1998); American Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc., 106 F. Supp. 2d 895, 899 (N.D. Tex. 2000); Nutrition Physiology Corp. v. Enviros Ltd., 87 F. Supp. 2d 648, 654-57 (N.D. Tex. 2000).

Courts must "start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." Manville Sales Corp. v. Paramount Sys. Inc., 917 F.2d 544, 552 (Fed. Cir.1990) (citations omitted). In complete disregard for this mandate, QR Spex relies on two of the twelve factors in urging this court to disregard the corporate structure and find Oakley the alter ego of OSC and ODI. QR Spex points to no case that actually would hold that Oakley is the alter ego of its subsidiaries. The cases cited by QR Spex generally set out that the corporate form should not be brushed aside, except in rare circumstances. See, e.g., Patin v. Thoroughbred Power Boats, Inc., 294 F. 3d 640, 650 (5th Cir. 2002) (contacts of predecessor in interest are imputed to successor in interest, under Florida law, because it was a mere continuation of the companies in an effort to hide liability); Compaq

<u>Computer Corp. v. Ergonome Inc.</u>, 387 F. 3d 403 (5th Cir. 2004) (no dispute on appeal by the defendant that it was the parent/alter ego of its subsidiary).

In fact, case law cited by QR Spex is dispositive in this case. The Fifth Circuit refused to find a parent company to be the alter ego of its subsidiaries, and to find jurisdiction, where (1) the plaintiff alleged that the parent company owned most of the stock in the subsidiary, (2) the two companies shared common officers, (3) the parent maintained quality control and operational governance over the subsidiary, and (4) the parent oversaw advertising and marketing operations for the subsidiary. <u>See</u> <u>Gardemal v. Westin Hotel Co.</u>, 186 F. 3d 588, 593 (5th Cir. 1999). In fact, the court noted that such evidence "reveals nothing more than a typical corporate relationship between a parent and subsidiary." <u>Id.</u> In that case, there was no "evidence of complete domination by the parent" because the subsidiary had its own bank accounts, was separately incorporated, maintained corporate formalities, and had its own staff, assets, and insurance policy. <u>See id.</u> at 594.

Similarly, QR Spex contends that Oakley is the alter ego of OSC, ODI, and Iacon because (1) Oakley owns 100% of the stock in each, (2) they share common corporate officers, (3) OSC and ODI rent office space from Oakley and pay Oakley to perform shipping services for them, and (4) Oakley oversees and approves guidelines in advertising and marketing of its trademarks, copyrighted images, and brand image. Curiously, QR Spex relies heavily on one reference, taken out of context during a deposition, to assert that there is "substantial" domination by Oakley of its subsidiaries. (Lykos Depo, 15-16) However, QR Spex failed to direct the court to the deponent's clarification of Oakley's oversight of marketing and advertising to ensure brand integrity later in his deposition. (Lykos Depo., 36:2-37:21)

Nonetheless, oversight and approval of marketing and advertising materials that reflect brand image with copyrighted and trademarked material is not the type of activity that shows domination by Oakley of its subsidiaries. <u>See id.</u>; <u>see also</u> <u>Doe v. Unocal Corp.</u>, 248 F. 3d 915, 925-26 (9th Cir. 2001) (monitoring a subsidiary's performance, supervising its finances, and setting policies and procedures for s subsidiary are typical of a parent-subsidiary relationship and insufficient for jurisdiction under the alter ego theory), <u>quoting</u> <u>United States v. Bestfoods</u>, 524

U.S. 51, 72, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998); <u>Hargrave</u>, 710 F. 2d at 1160 (oversight of "internal business operations and affairs" is not sufficient "to fuse the two for jurisdictional purposes"). The other evidence that QR Spex points to has repeatedly been rejected by the Fifth Circuit and others as being nothing more than a typical corporate relationship.  <u>See id.</u>; <u>see also</u> <u>Dalton v. R&W Marine, Inc.</u>, 897 F. 2d 1359, 1363 (5th Cir. 1990) (parent was not the alter ego of subsidiary even though it owned 100% of the subsidiary and set a general policy for the subsidiary, the subsidiary sent its revenue to a central bank account shared with the parent, and both companies filed a consolidated income tax because the companies maintained corporate formalities and the subsidiary was responsible for daily operations, its own personnel decisions, and kept its own records and accounts in separate books and filed separate state tax returns); <u>contrast</u> <u>DP Solutions, Inc. v. Rollins, Inc.</u>, 34 Fed. Appx. 150, 2002 WL 494672 (5th Cir., March 14, 2002) (unpublished) (parent was alter ego of subsidiary where they shared 32 common business departments, the subsidiary swept all money into a joint bank account at the end of the day, the parent paid expenses including payroll for the subsidiary, and the parent controlled the subsidiary's ability to hire outside companies).

      As set forth in detail in its moving papers, the overwhelming weight of the twelve factors shows that Oakley is not the alter ego of its subsidiaries.  They have no common business departments, they file consolidate taxes in California and federally, as permitted by law, but otherwise pay separate state taxes.  Oakley does not subsidize and finance OSC, ODI, or Iacon. Oakley incorporated OSC and ODI, but acquired Iacon.    There is no evidence of undercapitalization of any of the subsidiaries.  Each company pays its own salaries and expenses. Iacon and OSC sell products other than Oakley®.  Oakley does not use OSC's, ODI's, or Iacon's property as its own.  To the contrary, OSC and ODI have to pay rent to Oakley, as well as service fees.  The daily operations of the companies are separate.  Each company maintains its own book and records, and holds its own officer, director, and management meetings.  Clearly, there is no "degree of control exercised by [Oakley]…greater than that normally associated with common ownership and directorship."  <u>Hargrave,</u> 710 F.2d at 1160.

C.        **There Was No Allegedly Infringing Offer To Sell The O Rokr.**

If this court for some reason finds that Oakley is the alter ego of its subsidiaries, it would still have to find that there was an infringing offer for sale or use by one of Oakley's subsidiaries to exercise jurisdiction over Oakley.  QR Spex does not dispute that "an 'offer for sale' or an 'offer to sell' by a person other than the patentee, or any designee of the patentee, *is that in which the sale will occur* before the expiration of the term of the patent."  35 U.S.C. § 271(i). QR Spex cites no case law that supports the exercise of jurisdiction in this case as an allegedly infringing offer to sell.  Instead, QR Spex urges the court to look to traditional contract terms to see if an irrefutable offer to sell was made and takes excessive leeway in pulling "facts" out of context to make its argument.

As Plaintiff failed to present any evidence otherwise, it is undisputed that no O Rokr was sold in Texas and no pre-orders were made in Texas (Ex. B [Newcomb], ¶ 17; Ex. C [Olivet], ¶ 5)  Despite all its argument about the posting of the O Rokr on www.oakley.com, the evidence shows there were no pre-orders made in Texas.  (Plaintiff Ex. B, Books Nos. 00148-00164) However, even looking to contract terms, there must be some evidence that an offer was viewed and accepted.  In this case, neither exists in Texas. QR Spex has failed to present any evidence that any bona fide purchaser in Texas viewed the O Rokr product page at any time prior to the filing of the lawsuit or any time afterward.  Moreover, even if a pre-order had been placed, which did not occur, no sale would have been consummated because ODI would have cancelled an errant order.  In short, where QR Spex failed to produce even a mere scintilla of a bona fide offer communicated to any Texas resident, "it is difficult to imagine any commercial detriment" to QR Spex warranting the exercise of jurisdiction over ODI, let alone Oakley.  Rotec Indus., Inc. v. Mitsubishi Corp., 215 F. 3d 1246, 1255 (Fed. Cir. 2000); ESAB Group, Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 331-32 (D.S.C. 1999) (where there was no evidence of residents actually viewing a purported offer to sell on the internet, there was no offer to sell communicated).

Further, the O Rokr page on the website that was removed by the end of May 2006 did not have the requisite contract terms to be a binding offer to sell, even if it were viewed by a Texas resident. For example, the page had no delivery date, because none was anticipated, which would occasion a traditional binding offer to sell. See Moldflow Corp. v. Simcon, Inc., 296 F. Supp. 2d 34 (D. Mass. 2003) (finding no infringing offer to sell because where no time of delivery existed).

In sum, QR Spex has failed to present any evidence of a bona fide offer to sell that would have been consummated in Texas, whether on-line, at O Store locations, or by retailers placed with sales representatives. A lack of such evidence which QR Spex had the burden to produce, clearly supports finding that no allegedly infringing offer for sale occurred in Texas. See Cybriotronics, Ltd. v. Golden Source Elecs., Ltd., 130 F. Supp. 2d 1152, 1171-73 (C.D. Cal. 2001) (no infringing offer to sell had occurred where no sale was contemplated that would infringe in the forum); Quality Tubing, Inc. v. Precision Tube Holdings Corp., 75 F. Supp. 2d 613, 623-24 (S.D. Tex. 1999) (no offer to sell where the could have been no completed, infringing sale); Technical Mfg. corp. v. Integrated Dynamics, Engineering, Inc., 183 F. Supp. 2d 339, 342 (D. Mass. 2002) (negotiation and execution of contract to sell accused product is not an infringing offer unless it would result in an infringing act).

D.    **There Was No Allegedly Infringing Use Of The O Rokr.**

QR Spex also contends that there has been an infringing use in the state of Texas by Oakley because ten "engineering samples" of the O Rokr were sent to Texas and then returned.[2] Case law is scant about what exactly the term "use" means. However, the law is clear that there must still be a commercial component associated with these activities to constitute an infringing "use." See Intermedics, Inc. v. Ventritex, Inc., 775 F. Supp. 1269, 1285 (N.D. Cal. 1991).

All the cases relied upon by QR Spex reiterate this commercially related component. See Wayne Pigment Corp. v. Halox & Hammond Group, Inc., 220 F. Supp. 2d 931, 936 (E.D. Wisc.

---

[2] QR Spex cannot point to any evidence that Lance Armstrong actually used an O Rokr in Texas. Mr. Armstrong may be a Texas resident. However, the evidence is clear that he was given the O Rokr in California (Plaintiff Ex. B 3 (Lykos Depo), 94:16-95) and there is no evidence that he has used the O Rokr at all, let alone in Texas. The burden is on QR Spex to show an infringing use by Mr. Armstrong, and again, QR Spex failed to deliver.

2002) (defendant sent samples to distributors in the forum to evaluate and encourage their purchase of products for future sales); Dentsply Int'l, Inc. v. Great White, Inc., 132 F. supp. 2d 310, 319 (M.D. Penn. 2000) (infringing use where defendant sent samples to potential distributors to encourage them to make future purchases); Thorn EMI North American, Inc. v. Micron Tech., Inc., 821 F. Supp. 272, 275 (D. Del. 1993) (sending samples for purposes of soliciting business was an infringing use); Sud-Chemie, Inc. v. Multisorb Tech., Inc., 2004 'WL 755399, at *8 (W.D. Ken. 2004) (finding infringing offer to sell where advertising and sales information was sent to over 1200 forum residents along with an offer for free samples to encourage their business).  These cases merely show that where contract terms of an offer were not conveyed, but infringing samples were sent to potential purchasers in a commercial setting for review in the hopeful anticipation of future purchases by them, an infringing use existed. These cases are distinguishable from the present fact pattern.

OSC sent engineering samples to O Store managers and sales representatives "to see how the product performs to evaluate and to give feedback."  (Lykos Depo, 67:16-20)  "They are stamped engineering samples, and it's not for sale." (Lykos Depo, 67:13-14)  These samples are not for review by consumers or retailers and are not to be presented in any sales format.  (Lykos Depo, 67:21-68:2)  These activities are for review, education, and personal amusement.  These products are not shown to purchasers, and are not to entice purchasers.  These engineering samples cannot be an infringing use.[3]

E.     **Oakley Direct, Inc. Is Not Amenable To General Or Specific Jurisdiction.**

After conducting jurisdictional discovery of ODI,[4] QR Spex is unable to produce evidence of any offer to sell the O Rokr in Texas on www.oakley.com.  It is undisputed that ODI did not send any samples or any sales of the O Rokr into Texas.  As set forth above, there was no

---

[3] QR Spex also cites the Lykos deposition referring to samples given to industry reviewers.  However, it is abundantly clear that none of these reviewers were in Texas. (Exhibit G [Supp. Nelson Decl.] Ex. 5, ¶ 6)

[4] QR Spex contends that it has been denied sufficient jurisdictional discovery.  To the contrary, a representative that could testify for Oakley, ODI, and OSC submitted to a deposition on jurisdictional matters, including related to www.oakley.com, and the parties produced numerous documents for QR Spex's review.  ODI refused to submit to additional discovery where it had already submitted to sufficient discovery and posited questions appeared irrelevant. (Exhibit G [Supp. Nelson Decl.], ¶ 8)

bona fide offer to sell in Texas and no evidence that anyone from Texas even viewed the link on www.oakley.com. Accordingly, specific jurisdiction over ODI must fail.

Further, ODI cannot be subject to general jurisdiction in this court simply because it operates an interactive website. The Fifth Circuit has definitively ruled on this issue. Maintenance of a website, even if it were interactive, does not convey general jurisdiction over a non-resident defendant. See Revell v. Lidov, 317 F. 3d 467, 471 (5th Cir. 2002). Indeed, this court has held that the maintenance of an interactive website is not sufficient to convey general jurisdiction. See J-L Chieftain, Inc. v. Western Skyways, Inc., 351 F. Supp. 2d 587, 593-94 (E.D. Tex. 2004); accord ESAB Group, 34 F. Supp. 2d at 330 (interactive website combined with sales in the forum was insufficient for general jurisdiction). Sales of *non-accused* Oakley® product by ODI over the internet in Texas are insufficient to establish general jurisdiction it.[5]

F.   **This Case Should Be Transferred To The Central District Of California.**

   1.   **Venue is improper because neither Oakley, ODI, or OSC are subject to jurisdiction in the Eastern District of Texas.**

In considering whether venue is proper, the court must determine whether the defendants are subject to jurisdiction within the district, as if it were a separate forum. In brief form, Oakley should provide a response to the factual misrepresentations by QR Spex.

Oakley Inc. has no contracts in the Eastern District of Texas. ODI is not amenable to general jurisdiction in Texas and there is no evidence of any bona fide purchaser even viewing www.oakley.com to subject it to specific jurisdiction. OSC has no facilities, employees, bank accounts, property, or any other contacts in the Eastern District of Texas. Iacon has some locations in the Eastern District of Texas. However, it is a separate company, incorporated in Texas and headquartered in Arizona. All contracts between OSC and third party retailers are governed by California law and performed in California. All sales of Oakley® product to third party retailers are transacted in California and delivered F.O.B. California. Neither Oakley,

---

[5] In contrast, split authority exists where a defendant's ***primary means*** of conducting business is over an interactive website. See, e.g., Gator.com Corp. v. L.L. Bean, Inc., 341 F. 3d 1072, 1078 (9th Cir. 2003) (millions of dollars of sales coupled with extensive marketing with direct email solicitations and millions of catalog sales supported general jurisdiction).; Gorman v. Ameritrade Holding Corp., 293 F. 3d 506, 513 (D.D.C. 2002).

OSC, nor ODI have any business relationship with Cingular or Verizon.  Motorola may, but, it is beyond dispute that neither Cingular nor Verizon have any O Rokr product.  In sum, Plaintiff has failed to meet its burden to show that Oakley, ODI, and OSC are subject to jurisdiction in the Eastern District of Texas.

**2.      This case should be transferred to the Central District of California under 28 U.S.C. § 1404.**

Obviously, QR Spex has its reasons for filing this lawsuit in the Eastern District of Texas.  Whatever the reason, being as none of the parties are located here, the scenario is nearly identical with a case recently transferred by the Western District of Wisconsin, the "rocket docket" de jeur for plaintiffs.  Despite being known as a plaintiff-friendly forum, the Western District of Wisconsin recently granted a motion to transfer under 28 U.S.C. § 1404 to the Central District of California even though it had jurisdiction over the defendants.  See Guardian Media Tech., Ltd. v. Mustek Sys., Inc., 2006 WL 2096956 (W.D. Wisc. 2006).

In Guardian Media, none of the plaintiff or defendants was actually present in the forum, but the defendants' accused product was sold in Wisconsin.  See id. at *1.  In determining to transfer the case from the plaintiff's choice of forum, the court found the following facts persuasive: (1) where two of the defendants resided in California, the case would clearly be more convenient for them in California; (2) California was no less convenient for the plaintiff than travelling to Wisconsin; (3) where no non-party witnesses were identified, the convenience of party witnesses would be greatly improved in California; and (4) the likelihood of quicker resolution in Wisconsin did not weigh in favor of maintaining the action there.  See id. at *2.  Particularly, the court noted that where the plaintiff did not make a product that competed with the defendants, but employed the strategy of licensing its patents, the initial filing in Wisconsin carried very little weight.  See id.  Balancing "the enhancement of the convenience of the parties against the likelihood of a later trial date," the court transferred the case because of the improved convenience and "reduced importance of a speedy resolution."  Id.

In addition to the reasons set forth in their moving papers, Oakley, ODI, OSC, and Motorola contend that the same reasoning should apply in this case.  First, none of the parties

have their headquarters in Texas, meriting very little weight to QR Spex's choice to file here. See Robertson v. Kiamichi RR Co., 42 F. Supp. 2d 651, 656; Hanby v. Shell Oil Co., 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001); Rock Bit Int'l, Inc. v. Smith Int'l, Inc., 957 F. Supp. 843, 844 (E.D. Tex. 1997). Second, no prospective witnesses are in Texas. Third, most of the anticipated witnesses, including inventors of the patent-in-suit, are located in California along with much of the documentary evidence. Fourth, QR Spex failed to set forth any witnesses it intends to call, leaving the only non-party witnesses being those that may travel from Denmark and Singapore on behalf of the defendants. Fifth, there is little efficiency to be gained by keeping the case in Texas. QR Spex does not have a competing product and has shown itself as being one desirous of licensing its patent. So, speed of resolution is not important to QR Spex, only its hope of a payout. Moreover, the Central District of California is actually just as efficient, if not more so, at moving cases to trial or disposition. The overall convenience of the case would be greatly enhanced by transferring it to California where it could have been brought in the first place.[6]

3. **The first-to-file rule requires that this case be transferred to the Central District of California, the forum in which this case was first brought by ODI and OSC.**

The gist of QR Spex's argument against staying the present case with ODI and OSC, in lieu of the first-filed California action, is that Oakley, not ODI or OSC, chose to forego a counterclaim in Texas and filed a declaratory relief action in California. QR Spex is way off base with its accusation. As set forth in the moving papers, OSC and ODI chose to file the California action, not Oakley, because they were going to release the O Rokr and wanted a court ruling that they were not infringing. Though QR Spex had known that they would be selling the product for a month, QR Spex chose to not add them to the lawsuit in Texas. OSC and ODI filed the California action where they should have – in the forum where they are headquartered, and

---

[6] QR Spex's assertion that the case cannot be transferred to California because other parties still exist does not pass muster. The court had the authority to sever this case for purposes of transfer. Further, this case could have been brought in California, as Xonix sells product there, Zeal sells product there, and Kyocera is headquartered there. (Exhibit G [Supp. Nelson Decl.] ¶ 3)

where QR Spex does not contest that it is amenable to jurisdiction there.  (Exhibit G [Supp. Nelson Decl.] ¶ A)  If this action does go forward in this forum, Oakley will obviously counterclaim for declaratory relief.  But, OSC and ODI had every right to file their own lawsuit where they had a reasonable apprehension of being sued once they introduced the O Rokr.  Their California Action is clearly the first-filed action between them and QR Spex.

A complete review of the timing clearly shows that QR Spex purposefully chose to not add OSC or ODI to this action for almost four weeks:

· June 8, 2006 – QR Spex filed the Texas action.

· June 30, 2006 – Oakley, Inc. filed motion to dismiss the Texas action, which motion specifically advised QR Spex that OSC and ODI would be selling the O Rokr.

·July 10, 2006 – ODI and OSC filed the California action seeking declaratory relief.

·July 11, 2006 – QR Spex conducted jurisdictional discovery of Oakley, OSC, and ODI.[7]

·July 21, 2006 – QR Spex filed its opposition to the motion to dismiss the Texas action.

·July 27, 2006 – QR Spex amended its complaint to add OSC and ODI in Texas.

·August 23, 2006 – Central District of California issues "Notice Of Intent To Schedule The Case."  (Exhibit G [Suppl. Nelson Decl.] Ex. 2)

·August 31, 2006 – Upon stipulation of the parties, OSC and ODI file a First Amended Complaint in the California action seeking declaratory relief and redress for antitrust violations and unfair competition.  (Exhibit G [Supp. Nelson Decl.] Ex. 1)

QR Spex admits that the California action is the first-filed action, but argues that this action will prove dispositive of the California action. This claim is incorrect.  Aside from seeking declaratory relief, the California action also asserts causes of action of antitrust and unfair competition.  This case will not prove dispositive of those issues.

Additionally, QR Spex sets forth no case law as to why concurrent cases should go forward as to ODI and OSC.  Instead, it cites three cases that do not help its cause on this issue.

---

[7] Contrary to QR Spex's false representation, Motorola never refused to submit to jurisdictional discovery.  QR Spex indicated that if Motorola produced a sufficient declaration, it would forego taking a deposition of Motorola.  QR Spex produced the requested declaration about the location of participants on its side in the development of the O Rokr.  (Exhibit G [Supp. Nelson Decl.] ¶ 7 & Ex. 5)  Again, QR Spex conveniently forgot to mention this in its loose recitation of "facts" to this court.

Two cases involved actions where the defendant simply filed another declaratory relief action on *its own behalf.*  See Unisys Corp. v. Amperif Corp., 1994 WL 116105, at *1 (E.D. Pa., Mar. 15, 1994); Qualcomm, Inc. v. GTE Wireless, Inc., 79 F. Supp. 2d 1177, 1178 (S.D. Cal. 1999).  The last case action supports that conclusion that the California action is the first-filed case as to ODI and OSC.  In SAES Getters S.p.A. v. Aeronex, Inc., the court held that a counterclaim for patent infringement against the plaintiff and its subsidiary was the first-filed claim because the motion to file the amended answer was *filed before* declaratory relief was filed by the subsidiary in another court.  219 F. Supp. 2d 1081, 1094 (S.D. Cal. 2002).

A straightforward application of the first-to-file rule, as in SAES Getters, dictates that the California action is the first-filed action as to ODI and OSC.  Therefore, the action here against these parties should be stayed or transferred to the Central District of California.  See Mann Mfg. Inc. v. Itotex, Inc., 439 F. 2d 403, 407 (5th Cir. 1971).

G.      **Plaintiff Fails To Present Any Meritorious Position As To Why This Case Should Not Be Severed.**

QR Spex reliance on MyMail, Ltd. v. Am. Online, Inc., 223 F.R.D. 455, 457 (E.D. Tex. 2004) is misplaced.  Judge Davis did not indicate that a patent suit against multiple defendants could not be severed.  QR Spex overlooks that Judge Davis reached his conclusion to not sever some defendants because there was a nucleus of operative facts among all the defendants, in contrast to other cases that found there to be different accused products meriting severance.  See id. at 457-58.  In particular, the plaintiff in MyMail alleged that the moving defendants shared services and resources with the other defendants, which was not contested by the moving defendants.  See id. at 456-57.

In contrast, there is no nucleus of operative facts shared between Oakley, OSC, ODI, Motorola, and the other defendants.  QR Spex failed to plead any correlation, and sets forth no common facts in its opposition.  The defendants sell separate, competing products and share no resources, marketing, advertising, or otherwise have anything in common.  Accordingly, defendants urge the court to follow precedent that holds that severance is proper in this case. See, e.g., Multi-Tech Systems, Inc. v. Net2phone, Inc., 2000 WL 34494824 at *6 (D. Minn., June 26,

2000); Androphy v. Smith & Nephew, Inc., 31 F. Supp. 2d 620, 623 (N.D. Ill., 1998); New Jersey Mach., Inc. v. Alford Indus., Inc., 21 U.S.P.Q. 2d 2033, 2034-35 (D.N.J. 1991); Magnavox Co. v. APF Elec., 496, F. Supp. 29, 34 (N.D. Ill. 1980). At the very least, the court can and should sever this action for purposes of transfer. Gold v. Burton Corp., 949 F. Supp. 208, 209 (S.D.N.Y. 1996); Hallwood Realty Partners v. Gotham Partners, 104 F. Supp. 2d 279 (S.D.N.Y. 2000).

### III.    CONCLUSION

For the foregoing reasons, and those set forth in Oakley's moving papers, Defendants' motions should be granted.

Respectfully submitted,

DATED:        September 7, 2006

*/s/ Melvin R. Wilcox III*

_____
Melvin R. Wilcox III
Lead Attorney
SMEAD ANDERSON & DUNN
2110 Horseshoe Lane
P.O. Box 3343
Longview, TX 75606
Tel: (903) 232-1880
Fax: (903) 232-1889
Email: mrw@smeadlaw.com


*/s/  Gregory K. Nelson*
Gregory K. Nelson
WEEKS, KAUFMAN, NELSON & JOHNSON
462 Stevens Avenue, Suite 310
Solana Beach, CA 92075
Tel: (858) 794-2140
Fax: (858) 794-2141
Email:  wknjlaw@sbcglobal.net

Attorneys for Defendants
OAKLEY, INC., OAKLEY DIRECT, INC., OAKLEY
SALES CORP. & MOTOROLA, INC.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 7th day of September, 2006.

*/s/ Melvin R. Wilcox, III*
MELVIN R. WILCOX, III